COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss.                                              SUPERIOR COURT DEPT.
                                                          C.A.  03 1222

| | |
|---|---|
| JOHN BOUCHER, | * |
| | * |
| Plaintiff | * |
| | * |
| v. | * |
| | * |
| NORTHEASTERN LOG HOMES, INC. | * |
| and CONTINENTAL PRODUCTS CO., | * |
| | * |
| Defendants | * |
| | * |

### AMENDED COMPLAINT AND JURY DEMAND

1. The Plaintiff, John Boucher ("Boucher"), is an individual residing in Weymouth, Massachusetts.

2. Defendant Northeastern Log Homes, Inc ("Northeastern")., is, upon information and belief, a corporation organized under the laws of the State of Maine, with principal place of business in Kenduskeag, Maine. Northeastern has a place of business in Westfield, Hampden County, Massachusetts.

3. Defendant Continental Products Co. ("Continental") is, upon information and belief, a corporation organized under the laws of the State of Ohio, with principal place of business in Euclid, Ohio.

4. Both Northeastern and Continental regularly market and sell their products to consumers and businesses in Massachusetts, thereby conferring personal jurisdiction of this court on both defendants.

5. In or about July, 1999, Boucher purchased from Northeastern certain materials, including logs, necessary to construct a retirement home in Wakefield, New Hampshire.

6. In or about September, 1999, Northeastern shipped the above materials to the home site.

7. Construction of the home was completed near the end of 2000.

8. In the spring of 2001, Boucher noticed discoloration around the windows, white blotches on the kitchen walls and brown stains throughout the house.

9. In the spring of 2002, Boucher noticed that the defects set forth in Paragraph 8 had become more pronounced.

10. As the problems worsened, Boucher contacted Northeastern and alerted it to the above defects. Subsequent thereto representatives of Northeastern inspected the home and as a result thereof gave Boucher assurances that the above defects would be remedied at Northeastern's sole expense.

11. To date Northeastern has failed and refused to remedy the numerous defects in the home, which Boucher brought to its attention in a seasonable manner.

12. Prior to construction of the subject home, Northeastern caused the logs for the home to be bathed in a preservative.

13. The preservative was insufficient to keep the logs preserved in their condition as of delivery to the site.

14. After the logs were delivered to the site, the finish contractor, Scott Bond, applied to the logs a water-based sanding sealer, then a finish sealer, both of which were manufactured by Continental.

15. The walls, beams and window sills of the home continue to further discolor, thereby destroying the aesthetics of the home and dramatically reducing the enjoyment and value thereof.

### COUNT ONE: Breach of Implied Warranty
### (v. Northeastern and Continental)

16. Boucher realleges and reincorporates by reference the allegations in Paragraphs 1 through 15 above as if they were fully set forth herein.

17. There existed with respect to both the materials supplied by Northeastern (and applied thereto by the Boucher's contractor) and the finish supplied by Continental, an implied warranty that such materials were of merchantable quality and fit for their particular purposes.

18.  The discoloration and staining as described above constitute breaches of these implied warranties, for which Northeastern and Continental are both liable to Boucher.

### COUNT TWO: Breach of Express Warranty
### (v. Northeastern)

19.  Boucher realleges and reincorporates by reference the allegations in Paragraphs 1 through 18 above as if they were fully set forth herein.

20.  In its sales and marketing materials, Northeastern expressly warranted that the materials it supplied for the construction of Boucher's home would of "sufficient quality".

21.  The failure of the subject materials constitutes a breach of express warranty.

### COUNT THREE: Negligence
### (v. Northeastern)

22.  Boucher realleges and reincorporates by reference the allegations in Paragraphs 1 through 18 above as if they were fully set forth herein.

23.  Northeastern negligently and carelessly manufactured and/or applied its preservative to the materials used to construct Boucher's home.

24.  As a direct and proximate result of such negligence, Boucher has sustained economic loss.

### COUNT FOUR: Negligence
### (v. Continental)

25.  Boucher realleges and reincorporates by reference the allegations in Paragraphs 1 through 24 above as if they were fully set forth herein.

26.  Continental negligently and carelessly manufactured the finish that was applied to the materials used to construct Boucher's home.

27.  As a direct and proximate result of such negligence, Boucher has sustained economic loss.

## COUNT FIVE: Unfair Trade Practices
### (v. Northeastern)

28. Boucher realleges and reincorporates by reference the allegations in Paragraphs 1 through 27 above as if they were fully set forth herein.

29. Northeastern is engaged in "trade or commerce" as that phrase is defined in G.L. 93A.

30. On several occasions following their inspection of Boucher's home, representatives of Northeastern assured Boucher in telephone conversations between Northeastern and Boucher (while Boucher was at his offices in Quincy and Weymouth, Massachusetts) that it would remedy the defects in Boucher's New Hampshire home, for which it acknowledged responsibility.

31. Northeastern failed and refused to remedy the defects, despite acknowledging an obligation to do so.

32. Such failure and refusal constitutes an unfair and deceptive practice, violative of Chapter 93A.

33. As a result thereof, Boucher has sustained economic loss.

WHEREFORE, Boucher requests the following relief:

1. That judgment enter in his favor on Counts One through Four of the complaint, in an amount to be determined at trial, together with costs and pre-judgment interest; and

2. That judgment enter in his favor on Count Five of the Complaint, in an amount to be determined at trial, together with costs and pre-judgment interest and reasonable attorney's fees; and

3. That the court grant such other and further relief as it may deem just and proper.

**BOUCHER DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

_____
Alan S. Fanger, Esq.
144 Gould Street, Suite 140
Needham, MA 02494
(781) 449-8230
BBO No. 549692